## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| **WELLS FARGO BANK,** ) | |
| **NATIONAL ASSOCIATION** ) | |
|  ) | |
| **Plaintiff,** ) | |
|  ) | |
| **vs.** ) | **Case No.:** 4:19-cv-00454 |
|  ) | _____ |
|  ) | |
| **MECHELLE MERCILLE** ) | |
| **Serve at:  412 Willow Creek Drive** ) | |
| **Farmington MO 63640** ) | |
|  ) | |
| **And** ) | |
|  ) | |
| **RYAN WALKER** ) | |
| **Serve at:  507 Log Cabin Rd.** ) | |
| **Farmington MO 63640** ) | |
|  ) | |
| **Defendants.** ) | |

### VERIFIED COMPLAINT

COMES NOW Plaintiff Wells Fargo Bank, National Association and for its Verified Complaint against Defendants Mechelle Mercille and Ryan Walker, states the following:

### PARTIES, VENUE AND JURISDICTION

1.      Plaintiff Wells Fargo Bank, National Association, ("**Plaintiff**"), is a national association chartered under the laws of the United States of America with its principal place of residence in the State of California.

2.      Upon information and belief, Defendant Mechelle Mercille ("**Mercille**") has a principal residence in St. Francois County, Missouri, at 412 Willow Creek Drive, Farmington MO 63640.

3.      Upon information and belief, Defendant Ryan Walker ("**Walker**") has a principal residence in St. Francois County, Missouri, at 507 Log Cabin Rd., Farmington MO 63640.

4.      Jurisdiction and venue are proper with this Court in that the requirements of 28 U.S.C. § 1332 have been met, and Defendants reside within this District.

## FACTS COMMON TO ALL COUNTS

### *The Wellsone Agreement, the Business Direct Credit Agreement and Guaranty Agreements*

5.      On or about April 24, 2017, Gateway Wireless LLC ("**Borrower**") executed and delivered to Wells Fargo a Wellsone Commercial Card Agreement (the "**Wellsone Agreement**")(A true and correct copy of the Wellsone Agreement is attached hereto as **Exhibit A** and is incorporated herein by this reference).

6.      Contemporaneously with the execution of the Wellsone Agreement, Defendant Mercille signed and delivered a Guaranty to Plaintiff (the "**Mercille Wellsone Guaranty**") (A true and correct copy of the Mercille Wellsone Guaranty is incorporated into **Exhibit B,** and is incorporated herein by this reference).

7.      Also contemporaneously with the execution of the Wellsone Agreement, Defendant Walker signed and delivered a Guaranty to Plaintiff (the "**Walker Wellsone Guaranty**") (A true and correct copy of the Walker Wellsone Guaranty is incorporated into **Exhibit C,** and is incorporated herein by this reference).[1]

8.      The terms and conditions of the Wellsone Agreement provide that Borrower was to make payments to Plaintiff on amounts owed for credit extended by Plaintiff to Borrower. **Ex. A.**

9.      Pursuant to the Mercille Wellsone Guaranty and Walker Wellsone Guaranty, Defendants each individually agreed to guaranty, among other obligations as provided therein, the

---

[1]  The Wellsone Agreement, Mercille Wellsone Guaranty and Walker Wellsone Guaranty and all other documents evidencing, securing, or relating to the Wellsone Agreement made by Plaintiff to Borrower, are collectively referred to herein as the "**Wellsone Loan Documents.**"

repayment of all obligations pursuant to the Wellsone Agreement, whether then existing or arising thereafter, owed to Plaintiff, by Borrower.  **Ex. B.**

10.     Pursuant to the Mercille and Walker Wellsone Guaranty Agreements, Defendants agreed to pay all reasonable fees and expenses, including attorneys' fees and expenses, incurred on behalf of Plaintiff to enforce Plaintiff's rights under the Guaranty Agreement.  **Ex. B.**

11.     On or about February 1, 2017, Borrower, Mercille and Walker also executed and delivered to Wells Fargo a Business Direct Credit Agreement and Personal Guarantee (the "**Business Direct Agreement**")(A true and correct copy of the Business Direct Agreement is attached hereto as **Exhibit D** and is incorporated herein by this reference).

12.     As stated on the face of the Business Direct Agreement, the agreement served as both an agreement for the use of a Business Direct credit card, as well as the personal guarantees of both Mercille and Walker.  **Ex. D.**

13.     The terms and conditions of the Business Direct Agreement provide that Borrower was to make payments to Plaintiff on amounts owed for credit extended by Plaintiff to Borrower. **Ex. D.**

14.     Pursuant to the Business Direct Agreement, Defendants are each individually agreed to guaranty, among other obligations as provided therein, the repayment of all obligations pursuant to the Business Direct Agreement, whether then existing or arising thereafter, owed to Plaintiff, by Borrower.  **Ex. D.**

15.     Pursuant to the Business Direct Agreement, Defendants agreed to pay all reasonable fees and expenses, including attorneys' fees and expenses, incurred on behalf of Plaintiff to enforce Plaintiff's rights under the Business Direct Agreement.  **Ex. D.**

16.     Plaintiff relied on the personal guarantees included within the Business Direct Agreement when entering into that agreement.

### *Non-payment, Default and Acceleration*

17.     Under the Wellsone Agreement, Borrower was obligated to make payments to Plaintiff.  **Ex. A.**

18.     Under the Business Direct Agreement, Borrower was obligated to make payments to Plaintiff.  **Ex. D.**

19.     Borrower failed to make certain payments to Plaintiff in accordance with the terms of the Wellsone Agreement as well as the Business Direct Agreement and is in default of its obligations under each such agreement.

20.     On October 12, 2018, Borrower filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, and that bankruptcy is currently pending in the Southern District of Illinois District Court, styled *In re Gateway Wireless, LLC*, Case No. 18-31491-lkg, constituting another event of default under each such agreement.

21.     Plaintiff sent demand letters (the "**Demand Letters**") to Defendants demanding the immediate and full payment of the remaining amounts due under the Wellsone Agreement and Business Direct Agreement (True and correct copies of the Demand Letters are attached hereto as **Exhibit E,** and are incorporated herein by this reference).

22.     The indebtedness that is due under the Wellsone Agreement and Business Direct Agreement has been accelerated and is presently due, including all attorney's fees and costs that Plaintiff has incurred.

***Default of the Mercille Guaranty***

23.     Pursuant to the terms of the Mercille Wellsone Guaranty and Business Direct Agreement, Defendant Mercille promised to guaranty obligations owed to Plaintiff by Borrower, which include, without limitation, payment of all amounts due under the Wellsone Agreement and Business Direct Agreement.  **Ex. B; Ex. D.**

24.     Pursuant to the terms of the Mercille Wellsone Guaranty and Business Direct Agreement, Defendant promised to pay Plaintiff for all costs that it incurs in collecting the sums due under the Wellsone Agreement and Business Direct Agreement from Plaintiff to Borrower, as well as the Mercille Wellsone Guaranty, including, without limitation, attorneys' fees and costs. **Ex. B; Ex. D.**

25.     Despite demand, Defendant Mercille has not responded and has failed to pay Plaintiff the amounts due and owing under the Wellsone Loan Documents or Business Direct Agreement.

***Default of the Walker Guaranty***

26.     Pursuant to the terms of the Walker Wellsone Guaranty and Business Direct Agreement, Defendant Walker promised to guaranty obligations owed to Plaintiff by Borrower, which include, without limitation, payment of all amounts due under the Wellsone Agreement and/or Business Direct Agreement.  **Ex. C; Ex. D.**

27.     Pursuant to the terms of the Walker Wellsone Guaranty and Business Direct Agreement, Defendant promised to pay Plaintiff for all costs that it incurs in collecting the sums due under the Wellsone Agreement and Business Direct Agreement from Plaintiff to Borrower, as well as the Walker Wellsone Guaranty, including, without limitation, attorneys' fees and costs. **Ex. C; Ex. D.**

28.     Despite demand, Defendant Walker has not responded and has failed to pay Plaintiff the amounts due and owing under the Wellsone Loan Documents and Business Direct Agreement.

## COUNT I – BREACH OF GUARANTY AGREEMENT
## AGAINST MICHELLE MERCILE –WELLSONE GUARANTY

29.     Plaintiff restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

30.     Defendant Mercille is in default of her obligations to Plaintiff under the terms of the Mercille Wellsone Guaranty.

31.     Plaintiff demanded that Defendant Mercille pay all sums that Borrower failed to pay under the Wellsone Agreement, but to date Defendant Mercille has not made payment. ***See Ex. E.***

32.     Defendant Mercille is in default of her obligations to Plaintiff based upon her payment breaches under the Mercille Wellsone Guaranty.

33.     All indebtedness that Defendant Mercille owes under the Mercille Wellsone Guaranty is currently due and owing to Plaintiff.

34.     Plaintiff has incurred, and continues to incur, costs and expenses, including attorneys' fees and expenses, in collecting the sums due under the Wellsone Agreement for which Defendant Mercille is liable.

35.     After applying all payments and credits to which Defendant Mercille is entitled, Defendant Mercille owes Plaintiff $230,386.96 as of October 12, 2018 and attorney's fees, costs, expenses and other charges assessable to Defendant Mercille under the Wellsone Loan Documents as well as post-judgment interest.

**WHEREFORE** Plaintiff Wells Fargo Bank, National Association respectfully requests that the Court enter a judgment in its favor and against Defendant Mechelle Mercille on Count I in the amount of $230,386.96 as of October 12, 2018, as well as attorney's fees, costs, expenses and other charges assessable to Defendant Mercille under the Wellsone Loan Documents, and for such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF GUARANTY AGREEMENT
## AGAINST RYAN WALKER –WELLSONE GUARANTY

36.     Plaintiff restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

37.     Defendant Walker is in default of his obligations to Plaintiff under the terms of the Walker Wellsone Guaranty.

38.     Plaintiff demanded that Defendant Walker pay all sums that Borrower failed to pay under the Wellsone Agreement, but to date Defendant Walker has not made payment. *See* **Ex. E.**

39.     Defendant Walker is in default of his obligations to Plaintiff based upon his payment breaches under the Walker Wellsone Guaranty.

40.     All indebtedness that Defendant Walker owes under the Walker Wellsone Guaranty is currently due and owing to Plaintiff.

41.     Plaintiff has incurred, and continues to incur, costs and expenses, including attorneys' fees and expenses, in collecting the sums due under the Wellsone Loan Documents for which Defendant Walker is liable.

42.     After applying all payments and credits to which Defendant Walker is entitled, Defendant Walker owes Plaintiff $230,386.96, plus future accruing interest after October 12, 2018 and attorney's fees, costs, expenses and other charges assessable to Defendant under the Wellsone Loan Documents.

**WHEREFORE** Plaintiff Wells Fargo Bank, National Association, respectfully requests that the Court enter a judgment in its favor and against Defendant Ryan Walker on Count II in the amount of $230,386.96 as of October 12, 2018, in addition to attorney's fees, costs, expenses and other charges assessable to Defendant Walker under the Wellsone Loan Documents, and for such other and further relief as the Court deems just and proper.

<u>COUNT III – BREACH OF GUARANTY AGREEMENT</u>
<u>AGAINST MICHELLE MERCILLE –BUSINESS DIRECT AGREEMENT</u>

43.     Plaintiff restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

44.     Defendant Mercille is in default of her obligations to Plaintiff under the terms of the Business Direct Agreement.

45.     Plaintiff demanded that Defendant Mercille pay all sums that Borrower failed to pay under the Loan, but to date Defendant Mercille has not made payment.  *See* **Ex. E.**

46.     Defendant Mercille is in default of her obligations to Plaintiff based upon her payment breaches under Business Direct Agreement.

47.     All indebtedness that Defendant Mercille owes under the Business Direct Agreement is currently due and owing to Plaintiff.

48.     Plaintiff has incurred, and continues to incur, costs and expenses, including attorneys' fees and expenses, in collecting the sums due under the Business Direct Agreement for which Defendant Mercille is liable.

49.     After applying all payments and credits to which Defendant Mercille is entitled, Defendant Mercille owes Plaintiff $100,827.07 as of October 12, 2018, as well as attorney's fees, costs, expenses and other charges assessable to Defendant Mercille under the Business Direct Agreement.

**WHEREFORE** Plaintiff Wells Fargo Bank, National Association respectfully requests that the Court enter a judgment in its favor and against Defendant Mechelle Mercille on Count III in the amount of $100,827.07 as of October 12, 2018, and attorney's fees, costs, expenses and other charges assessable to Defendant Mercille under the Business Direct Agreement, and for such other and further relief as the Court deems just and proper.

## COUNT IV – BREACH OF GUARANTY AGREEMENT
## AGAINST RYAN WALKER –BUSINESS DIRECT GUARANTY

50.     Plaintiff restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

51.     Defendant Walker is in default of his obligations to Plaintiff under the terms of the Business Direct Agreement.

52.     Plaintiff demanded that Defendant Walker pay all sums that Borrower failed to pay under the Business Direct Agreement, but to date Defendant Walker has not made payment. ***See Ex. E.***

53.     Defendant Walker is in default of his obligations to Plaintiff based upon his payment breaches under the Business Direct Agreement.

54.     All indebtedness that Defendant Walker owes under the Business Direct Agreement is currently due and owing to Plaintiff.

55.     Plaintiff has incurred, and continues to incur, costs and expenses, including attorneys' fees and expenses, in collecting the sums due under the Business Direct Agreement for which Defendant Walker is liable.

56.     After applying all payments and credits to which Defendant Walker is entitled, Defendant Walker owes Plaintiff $100,827.07, plus future accruing interest and late fees after

October 12, 2018, and attorney's fees, costs, expenses and other charges assessable to Defendant

Walker under the Business Direct Agreement.

      **WHEREFORE** Plaintiff Wells Fargo Bank, National Association respectfully requests

that the Court enter a judgment in its favor and against Defendant Ryan Walker on Count IV in

the amount of $100,827.07 as of October 12, 2018, in addition to attorney's fees, costs, expenses

and other charges assessable to Defendant Walker under the Business Direct Agreement, and for

such other and further relief as the Court deems just and proper.

      Respectfully submitted,

      LATHROP GAGE LLP

      */s/ Emily E. Cantwell*
      Emily E. Cantwell, #63004MO
      ecantwell@lathropgage.com
      7701 Forsyth Boulevard, Suite 500
      Clayton, MO 63105
      Phone: (314) 613-2800
      Fax:   (314) 613-2801

      ***Attorneys for Plaintiff***

## VERIFICATION

STATE OF IOWA             )
                                       ) ss.
COUNTY OF POLK         )

        Victor M. Dutchuk, Jr., being first duly sworn upon his oath, states that he is an Assistant Vice President in the Credit Management Group for Wells Fargo Bank, National Association, that Wells Fargo Bank, National Association, authorizes him to verify the above Complaint, and that the factual allegations contained therein are true and correct to the best of his knowledge and belief.

                              **Wells Fargo Bank, National Association**

                              By: _____
                              Victor M. Dutchuk, Jr.
                              Assistant Vice President,
                              Credit Management Group

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in Des Moines, IA, this _14th_ day of _March_ 2019.

                              _____
                              Notary Public in and for Said County and State

My Commission Expires:

_1-25-20_

PHYLLIS J. BISBEE
Comm. Number 154676
My Commission Expires
January 25, 2020

30928665v.1